**UNITED STATES DISTRICT COURT**        **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| TASHICA MILES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:23-CV-373 |
| | § | |
| PORT ARTHUR ISD, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Port Arthur ISD's ("PAISD") Motion to Dismiss Plaintiff Tashica Miles's ("Miles") First Amended Complaint (#18) and Miles's Unopposed Motion for Leave to File Out of Time Response (#19).  The court grants Miles's Motion for Leave to File Out of Time Response, and accordingly, will consider Miles's response to PAISD's Motion to Dismiss (#20) and PAISD's reply (#23).  Having considered PAISD's motion to dismiss, the submissions of the parties, the record, and the applicable law, the court is of the opinion that the motion should be granted in part and denied in part.

I.    Background

Miles, an African-American female, worked as one of five Computer Technicians for PAISD from August 2017 to September 2019.[1]  Miles contends that one of the Technology Supervisors, Terry Bellanger ("Bellanger"), treated her unfairly on the basis of her race.[2]  Miles asserts that when she applied for the Computer Technician position, Bellanger wanted to hire a white female candidate but was out-voted by the other Technology Supervisors.  Miles contends

---

[1] Miles's pleadings do not identify the race of the other Computer Technicians.

[2] Miles's pleadings note that Bellanger was her only white supervisor.

that Bellanger subjected her to harassment in order to "get rid of her." For instance, Miles asserts that Bellanger initially told Miles that she could take "'long-lunches-two hours' as long as the work was getting done," but he later suspended Miles for two days without pay for taking longer than one-hour lunch breaks on two occasions. Additionally, Miles contends that Bellanger suspended her for clocking in at a campus other than the "T.J. campus"[3] despite it being common for the Computer Technicians to clock in at different campuses. Moreover, Miles alleges that Bellanger told her she could not take her work truck home for lunch, but he later reversed course and told her she must take her work truck home for lunch. Miles avers that on September 5, 2019, Assistant Superintendent Phyllis Geans ("Geans"), Chief of Technology Anthony Jackson ("Jackson"), and Bellanger met with Miles in Bellanger's office. Miles contends that, during this meeting, Bellanger informed Miles that she was being fired for taking her work truck home for lunch and because PAISD had received complaints from the schools regarding Miles.[4] Miles alleges that, prior to her termination, she complained to Jackson about being bullied by Bellanger, but no action was taken. Following her separation from PAISD, Miles maintains that the school district hired a white male to fill her position, "who it is believed because of events related to this lawsuit, was himself terminated by PAISD." On January 10, 2020, Miles filed her First Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race

---

[3] Although not specified in her Amended Complaint, the court assumes that the "T.J. Campus" is where the Computer Technicians' offices were located.

[4] According to PAISD's response, Miles officially resigned from her employment in lieu of termination on November 14, 2019. In ruling on a motion to dismiss, however, the court must accept the factual allegations of the complaint as true.

2

and sex-based discrimination.[5]  Miles received a right-to-sue letter but did not file a lawsuit at that time.

In August 2022, GTS Technology Solutions ("GTS"), one of PAISD's vendors, hired Miles to work as a "Technology Temp."  GTS assigned Miles to one of PAISD's school campuses.  According to Miles, despite her "professional and discrete [sic]" conduct while working for GTS at PAISD's school campuses, when Bellanger found out that she was working at PAISD, he informed GTS that PAISD did not want Miles assigned to its campuses due to her prior work performance.  Miles alleges that she then "again became unemployed."  On November 4, 2022, Miles filed her Second Charge of Discrimination with the EEOC "alleging retaliation and discrimination for race[], as a continuing action."[6]  On July 14, 2023, the EEOC issued a right-to-sue letter in response to Miles's Second Charge of Discrimination.

On October 11, 2023, within 90 days of the second right-to-sue letter, Miles filed her Original Complaint (#1) alleging that PAISD discriminated and retaliated against her because of her race, sex, and age in violation of Title VII and deprived Miles of her rights under the First and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.  On

---

[5] According to PAISD's response, Miles filed her First Charge of Discrimination on January 10, 2020.

[6] On February 7, 2024, Miles complied with the court's order to file a copy of the second EEOC right-to-sue notice referenced in her pleading.  The second EEOC notice included a copy of her EEOC charge of discrimination.  Notably, in completing the charge of discrimination, Miles checked the following boxes under "cause of discrimination based on": race, sex, and retaliation.  Miles's Amended Complaint states that her charge of discrimination was based on race and retaliation, but it makes no mention of sex-based discrimination.

March 13, 2024, Miles filed an Amended Complaint (#13) against PAISD.[7]  Although Miles's

Amended Complaint lacks clarity, she appears to have revised and limited her causes of action to

assert race-based discrimination and retaliation under Title VII, as well as equal protection and due

process claims under 42 U.S.C. § 1983.  PAISD now moves to dismiss Miles's Amended

Complaint.[8]

## II.    Analysis

### A.    Motion to Dismiss Standard

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule

12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement

of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to

state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001);

*accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that in order "[t]o survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face"); *Spano ex rel. C.S. v. Whole Foods, Inc.*, 65 F.4th 260, 262

(5th Cir. 2023) (quoting *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of

Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018)); *Coleman E. Adler & Sons, L.L.C. v. Axis Surplus

Ins. Co.*, 49 F.4th 894, 896 (5th Cir. 2022); *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d

339, 345 (5th Cir. 2020).  Such a motion is "not meant to resolve disputed facts or test the merits

---

[7] Miles's pleading states that the second right-to-sue letter issued by the EEOC "qualifies Ms. Sanders' right to initiate litigation" and that the "Statute of Limitations closes on or about June 5th, 2020." These statements appear to be connected to persons and events not at issue in this case.

[8] PAISD states that its Motion to Dismiss is filed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  To the extent that PAISD intends to rely on Federal Rule of Civil Procedure 12(b)(1), the court finds that it has not briefed or addressed this basis for dismissal in its motion. Accordingly, the court will only consider PAISD's motion pursuant to 12(b)(6).

of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020); *accord Damond v. City of Rayville*, 127 F.4th 935, 938 (5th Cir. 2025); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2019). In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Mesa*, 582 U.S. 548, 550 (2017); *Benfer v. City of Baytown*, 120 F.4th 1272, 1279 (5th Cir. 2024), *cert. denied sub nom. Benfer v. Baytown*, No. 24-823, 2025 WL 663718 (U.S. Mar. 3, 2025); *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021); *IberiaBank Corp.*, 953 F.3d at 345 (citing *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013)). The court, however, does not "strain to find inferences favorable to the plaintiff[]" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004); *accord Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 20-40491, 2022 WL 340592, at *3 (5th Cir. Feb. 4, 2022); *Modelist v. Miller*, 445 F. App'x 737, 739 (5th Cir. 2011); *see Damond*, 127 F.4th at 938 ("A claim is . . . frivolous when it 'lacks an arguable basis either in law or in fact.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989))).

"[T]he plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Oscar Renda Contracting, Inc. v. Lubbock*, 463 F.3d 378, 381 (5th Cir. 2006) (citing *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)); *accord Damond*, 127 F.4th at 938; *Ramming*, 281 F.3d at 161. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007); *accord Willis v. W. Power Sports, Inc.*, No. 23-10687, 2024 WL 448354, at *1 (5th Cir. Feb. 6, 2024); *Spano ex rel. C.S.*, 65 F.4th at 262; *King v. Baylor Univ.*, 46 F.4th 344, 355 (5th Cir. 2022); *Davis v. Tex. Health & Hum. Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019).  "Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678); *accord King*, 46 F.4th at 355.  Hence, "a complaint's allegations 'must make relief plausible, not merely conceivable, when taken as true.'"  *Walker*, 938 F.3d at 734 (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009)); *see Damond*, 127 F.4th at 937-38 (noting that a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (quoting *Iqbal*, 556 U.S. at 678)); *King*, 46 F.4th at 355.

A Rule 12(b)(6) motion to dismiss must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure.  *Twombly*, 550 U.S. at 555.  Accordingly, a district court should not dismiss a complaint for failure to state a claim unless a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570; *accord Damond*, 127 F.4th at 937; *Benfer*, 120 F.4th at 1279; *King*, 46 F.4th at 355; *IberiaBank Corp.*, 953 F.3d at 345 (quoting *Iqbal*, 556 U.S. at 678); *Zastrow v. Hous. Auto Imps. Greenway Ltd.*, 789 F.3d 553, 559 (5th Cir. 2015).  "Facial plausibility is satisfied 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Benfer*, 120 F.4th at 1279 (quoting *Terwilliger v. Reyna*, 4 F.4th 270, 279

(5th Cir. 2021)); *accord Damond*, 127 F.4th at 937; *Hamilton v. Dallas County*, 79 F.4th 494, 499 (5th Cir. 2023); *King*, 46 F.4th at 355-56.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Walker*, 938 F.3d at 735 (quoting *Iqbal*, 556 U.S. at 678); *accord King*, 46 F.4th at 356. "Factual allegations that are 'merely consistent with a defendant's liability, stop short of the line between possibility and plausibility of entitlement to relief,' and thus are inadequate." *Walker*, 938 F.3d at 735. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Shaw v. Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678); *accord Damond*, 127 F.4th at 938 ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002))); *King*, 46 F.4th at 356 ("[C]ourts 'do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005))). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *Shaw*, 918 F.3d at 419.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *Wells v. Tex. Tech Univ.*, No. 24-10518, 2025 WL 673439, at *2 (5th Cir. Mar. 3, 2025); *Shaw*, 918 F.3d at 419. In other words, to state a cognizable cause of action, the complaint must allege sufficient facts to "nudge" the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Leal*, 731 F.3d at 410; *see Walker*, 938 F.3d at 734 (quoting *Grubbs*, 565 F.3d at 186).

B.    Section 1983 Claims

The Civil Rights Act of 1871, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law. *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 171 (2023); *Manuel v. City of Joliet*, 580 U.S. 357, 362 (2017); *Brown v. Pouncy*, 93 F.4th 331, 333 (5th Cir.), *cert. denied*, 145 S. Ct. 170 (2024); *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 371 (5th Cir. 2018). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983; *accord Connick v. Thompson*, 563 U.S. 51, 60 (2011). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Singleton v. Casanova*, No. 22-50327, 2024 WL 2891900, at *4 (5th Cir. June 10, 2024); *Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 395 n.39 (5th Cir. 2020); *see DeVillier v. Texas*, 601 U.S. 285, 291 (2024).

The Supreme Court of the United States has expressly held that local governmental entities, such as a school district, may be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436

8

U.S. 658, 690 (1978); *see Lozman v. City of Riviera Beach*, 585 U.S. 87, 95 (2018); *R.W. v. Clear Creek Indep. Sch. Dist.*, No. 24-40141, 2025 WL 801360, at *3 (5th Cir. Mar. 13, 2025); *Griggs v. Chickasaw County*, 930 F.3d 696, 704 (5th Cir. 2019). A governmental entity may also be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690-91; *Damond*, 127 F.4th at 938 (quoting *Collins v. City of Harker Heights*, 916 F.2d 284, 286 (5th Cir. 1990)); *Benfer*, 120 F.4th at 1286. The United States Court of Appeals for the Fifth Circuit has defined an official policy or custom as:

1.  A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.  A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)); *accord Damond*, 127 F.4th at 938 (quoting *Collins*, 916 F.2d at 286); *Jackson v. Valdez*, 852 F. App'x 129, 135 (5th Cir. 2021). Section 1983 claims against a governmental entity based on the customs and policies of that entity are commonly referred to as *Monell* claims.

"To establish municipal liability, a plaintiff must show '(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom).'" *Benfer*, 120 F.4th at

9

1285 (quoting *Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021)); *Verastique v. City of Dallas*, 106 F.4th 427, 432 (5th Cir.) (quoting *Johnson v. Harris County*, 83 F.4th 941, 946 (5th Cir. 2023)), *cert. denied*, 145 S. Ct. 772 (2024); *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1011 (5th Cir. 2023) (quoting *Monell*, 436 U.S. at 694); *accord R.W.*, 2025 WL 801360, at *3; *Doe v. Burleson County*, 86 F.4th 172, 176 (5th Cir. 2023).  Moreover, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001); *accord Benfer*, 120 F.4th at 1285-86; *Edwards v. City of Balch Springs*, 70 F.4th 302, 312 (5th Cir. 2023); *M. D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 254 (5th Cir. 2018); *Martinez v. Maverick County*, 507 F. App'x 446, 448 (5th Cir. 2013) ("wide-ranging conclusory allegations" fail to identify an injury-causing policy).

"[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." *Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015) (quoting *Piotrowski*, 237 F.3d at 578); *accord James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009); *see Verastique*, 106 F.4th at 436.  Therefore, to establish liability under § 1983, Miles must point to more than the actions of a PAISD employee; instead, she "must identify a policymaker with final policymaking authority and a policy that is the 'moving force' behind the alleged constitutional violation." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Piotrowski*, 237 F.3d at 578); *see Benfer*, 120 F.4th at 1285-86 (quoting *Groden v. City of Dallas*, 826 F.3d 280, 283-84 (5th Cir. 2016)); *McClelland*, 63 F.4th at 1011.

Nevertheless, at the 12(b)(6) stage, "the specific identity of the policymaker is a legal question that need not be pled; the complaint need only allege facts that show an official policy,

promulgated or ratified by the policymaker, under which the municipality is said to be liable."
*Groden*, 826 F.3d at 284; *accord Benfer*, 120 F.4th at 1285-86 (quoting *Groden*, 826 F.3d at 283-84); *McClelland*, 63 F.4th at 1011; *see Burleson County*, 86 F.4th at 176 ("[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the [municipality] to § 1983 liability." (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988))).  In any event, because PAISD is not liable for its employees' conduct under § 1983 pursuant to a theory of *respondeat superior*, Miles must plead facts sufficient to allow the court to infer that the policymaker adopted, or delegated policymaking authority to someone who adopted, the policy that was the moving force behind her constitutional injury.  *Benfer*, 120 F.4th at 1285-86; *McClelland*, 63 F.4th at 1011; *see Verastique*, 106 F.4th at 436; *Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) (holding that a plaintiff must plead facts that sufficiently connect the policymaker to the allegedly unconstitutional activity (citing *Groden*, 826 F.3d at 286)).

### 1.    Official Policy or Custom

A "policy" can be demonstrated in three different manners.  The first type of "policy" is characterized by formal rules and understandings which constitute fixed plans of action to be followed under similar circumstances consistently and over time.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *accord ODonnell v. Harris County*, 892 F.3d 147, 155 (5th Cir. 2018) (citing *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).  The second type of "policy" arises from custom, *i.e.*, "conduct that has become a traditional way of carrying out policy and has acquired the force of law."  *Bennett*, 728 F.2d at 768; *accord Verastique*, 106 F.4th at 432; *see Benfer*, 120 F.4th at 1286 (observing that "[a] municipality, . . . may . . . be

liable under § 1983 in the absence of an official policy if there is an employee practice that is so wide-spread and common that it constitutes a custom representing the policies of the municipality"); *ODonnell*, 892 F.3d at 155. A third type of "policy" stems from "the action of a single 'policymaker.'" *Burleson County*, 86 F.4th at 176; *accord Liggins v. Duncanville*, 52 F.4th 953, 955 (5th Cir. 2022). "In rare circumstances, a single unconstitutional action may be sufficient to impose municipal liability if undertaken by the municipal official or entity possessing final policymaking authority for the action in question." *Burleson County*, 86 F.4th at 176 (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017)); *accord Praprotnik*, 485 U.S. at 123; *Liggins*, 52 F.4th at 955; *Advanced Tech. Bldg. Sols., L.L.C. v. City of Jackson,* 817 F.3d 163, 165 (5th Cir. 2016) (clarifying that "liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered" (quoting *Pembaur*, 475 U.S. at 481)).

Here, Miles alleges that PAISD has a widespread policy of tolerating "illegal, inappropriate, or arbitrary conduct by the PAISD command chain employees such as Bellanger, Jackson, and Geans." Specifically, Miles states that PAISD policymakers permitted the following customs which gave rise to her constitutional injuries:

> [O]verlooking or discounting complaints and information indicating inappropriate discriminatory and harassing behavior from chain of command such as Terry Bellanger, Anthony Jackson, Phyllis Geans, and Superintendent Mark Porterie; failing to implement and enforce a Zero Tolerance Policy[9] for retaliatory activity for employees who are subjected to racial and or retaliatory [a]ctions by personnel supervisors; failing to adequately train and supervise personnel supervisors; failing to establish and ensure enforcement of adequate procedures for reviewing personnel

---

[9] In her Amended Complaint, Miles also states that "PAISD has a zero based policy for racial discrimination."

supervisors, in general, and complaints involving allegations of inappropriate behavior by personnel supervisors.[10]

PAISD contends that Miles does not specifically identify any Board-approved, official policy, regulation, bylaw, or ordinance that caused or contributed to any violations of her Constitutional rights.  The court agrees with PAISD.  As previously stated, § 1983 demands that "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff."  *Piotrowski*, 237 F.3d at 579; *accord Benfer*, 120 F.4th at 1287; *Edwards*, 70 F.4th at 312; *M. D. ex rel. Stukenberg*, 907 F.3d at 253-54; *Martinez*, 507 F. App'x at 448.  Miles does not allege facts identifying an official policy, promulgated or ratified by the policymaker, for which PAISD can be held liable.  To the contrary, the Amended Complaint cites to two PAISD policies, included in its Board Policy Manual, that establish PAISD had written employment policies to counter discrimination and retaliation:

(1) "Employment Objections:  Equal Employment Opportunity" Policy, which expressly prohibits discrimination in hiring and discharging employees; and

(2) "Personnel-Management Relations:  Employee Complaints/Grievances" Policy, which provides instructions to employees on how to file various complaints.

Accordingly, Miles has failed to plead that PAISD implemented a formal policy authorizing discrimination.

---

[10] In addition to these allegations, Miles also contends that PAISD has certain policies that appear to have nothing to do with her lawsuit, including policies regarding outside employment and tutoring, severely autistic students, and the handling of complaints of abusive and/or inappropriate behavior by employees towards students.  Considering the litany of typographical errors in Miles's Amended Complaint, the court will not strain to comprehend her inclusion of these policies.

Miles also fails to plead a custom adequately.  Where a custom is shown, the plaintiff must demonstrate that "[a]ctual or constructive knowledge of [a] custom [is] attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)); *see Benfer*, 120 F.4th at 1286; *Robinson v. Midland County*, 80 F.4th 704, 710 (5th Cir. 2023); *Martinez v. Nueces County*, 71 F.4th 385, 389 (5th Cir. 2023). Aside from the isolated allegations of discrimination that she herself endured, Miles does not highlight any other instances of discrimination allegedly predicated on race or other attributes. *See Jackson*, 852 F. App'x at 135 ("To plausibly plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to [her] injury."); *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020) (quoting *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)).  Thus, because Miles has not demonstrated "a pattern of abuses that transcends the error[s] made in a single case," she has not sufficiently pleaded deliberate indifference via the proof-by-pattern method.

### 2.    Policymaker

As PAISD points out, Miles did not identify a policymaker in her pleading.  While, at the 12(b)(6) stage, a plaintiff need not plead the specific identity of the policymaker, she must plead facts that sufficiently connect the policymaker to the allegedly unconstitutional activity.  Miles appears to contend that PAISD's Superintendent Mark Porterie ("Porterie"), Assistant Superintendent Geans, and Chief of Technology Jackson essentially permitted Bellanger to discriminate against and harass Miles.  However, these individuals are not policymakers for PAISD.  Under Texas law, final policymaking authority for an independent school district is in

14

its board of trustees.  *See R.W.*, 2025 WL 801360, at *3 n.2; *McClelland*, 63 F.4th at 1011; *Longoria ex rel. M.L.*, 942 F.3d at 271 (citing TEX. EDUC. CODE § 11.151(b)).  While difficult to decipher from her pleading, the court construes Miles's Amended Complaint to contend that the PAISD Board of Trustees delegated its policymaking authority to a subordinate person or entity.  She does not, however, specify to whom PAISD delegated such policymaking authority.

A final policymaker, as identified by state law, may delegate its final policymaking authority to an employee of the local governmental entity.  *Covington v. City of Madisonville*, No. 22-20311, 2023 WL 5346375, at *1 (5th Cir. Aug. 18, 2023); *Sweetin v. City of Texas City*, 48 F.4th 387, 393 (5th Cir. 2022); *Jackson*, 852 F. App'x at 135; *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019).  The delegation may be express or implied.  *Sweetin*, 48 F.4th at 393-94; *Webb*, 925 F.3d at 215 ("A municipal employee may also possess final policymaking authority where the final policymaker has delegated that authority, either expressly or impliedly.").  Here, Miles contends in a conclusory manner that "PAISD officials, who were policy makers for BISD [sic] and/or delegated policymaking authority," are responsible for her constitutional injuries.  This statement does not specify the identity of the "PAISD Officials" referenced, nor does it explain how they delegated their authority.  Thus, the pleading does not contain sufficient factual material to allow the court to infer that PAISD delegated its policymaking authority to Porterie, Geans, Jackson, or any other school employee.  *See, e.g., Pembaur*, 475 U.S. at 482-83; *McClelland*, 63 F.4th at 1012 (finding that plaintiff did not allege facts to show that the school board delegated policy making authority); *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 413 (5th Cir. 2015) (finding that school administrators and the interim superintendent were not delegated policymaking authority); *Moore v. Dall. Indep. Sch. Dist.*, 370 F. App'x 455,

458 (5th Cir. 2010) (finding in the summary judgment context that the school district was not liable for due process claim where plaintiff presented no evidence that the school board had any role in terminating plaintiff's employment); *Jett*, 7 F.3d at 1245 ("Under Texas law such policymaking authority rest[s] exclusively with the [Board], and there is no evidence they had delegated it to [the superintendent]."); *Maxwell v. Mesquite Indep. Sch. Dist.*, No. 3:20-CV-03581-S, 2022 WL 2392410, at *4 (N.D. Tex. July 1, 2022) (holding that the plaintiff did not plead "sufficient facts to show that [the superintendent] was a policymaker with respect to his authority to terminate noncontractual employees"); *Boggs v. Krum Indep. Sch. Dist.*, 376 F. Supp. 3d 714, 724 (E.D. Tex. 2019) (finding that neither the superintendent nor principal was a school district policymaker, nor was there any evidence that the school board was aware of the purported custom).

Moreover, to the extent that Miles intends to assert a failure to train cause of action, her pleading falters on the first requirement. "In order for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective." *Benfer*, 120 F.4th at 1287 (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)); *accord Wilson v. Baucom*, No. 22-50066, 2023 WL 4288350, at *5 (5th Cir. June 30, 2023). Miles merely alleges that officials "failed to fashion properly or to execute faithfully adequate policies to train employees to recognize, investigate, record, stop, prevent and report sexually inappropriate behavior by supervisory educators," and "fail[ed] to adequately train and supervise personnel supervisors." "Moreover, to prove deliberate indifference, a plaintiff must demonstrate 'at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation.'" *Wilson*, 2023 WL

16

4288350, at *5 (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005)).  As noted above, Miles also fails to allege a pattern of similar violations.  Thus, Miles fails to allege plausibly that PAISD is liable under a "failure-to-train" theory.

Consequently, Miles's claims under § 1983 must be dismissed.

C.    Title VII Claims

Title VII permits employees to sue their employers for discriminatory employment actions. *See Groff v. DeJoy*, 600 U.S. 447, 457 (2023); *Ibanez v. Tex. A&M Univ. Kingsville*, 118 F.4th 677, 682 (5th Cir. 2024); *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 507 (5th Cir. 2024); *Hamilton*, 79 F.4th at 497.  In Texas, because there is a state agency with the authority to grant or seek relief for discriminatory employment practices, in order to maintain a Title VII claim, a plaintiff must file her charge of discrimination with the EEOC or the designated state agency within "three hundred days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1); *Fort Bend County v. Davis*, 587 U.S. 541, 544 (2019); *Weathers v. Hous. Methodist Hosp.*, 116 F.4th 324, 329 (5th Cir. 2024).  "A claim is considered filed when it is *received* by the EEOC or the state agency responsible for the administration of complaints of employment discrimination."  *Kirkland v. Big Lots Store, Inc.*, 547 F. App'x 570, 573 (5th Cir. 2013) (citing 29 C.F.R. § 1601.13(a)(4)(2)(a)(A); *see Weathers*, 116 F.4th at 329.  Generally, the limitations period begins on the date the discriminatory act occurred, and a plaintiff cannot sustain her claims based on incidents that occurred more than 300 days before the filing of a charge of discrimination.  *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 623-24 (2007), *superseded in part by statute on other grounds*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2 (codified at 42 U.S.C. § 2000e-5(e)(3)); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

101, 110 (2002); *Weathers*, 116 F.4th at 329; *Ganheart v. Brown*, 740 F. App'x 386, 389 (5th Cir. 2018).

A claimant must "initiate a Title VII civil action within 90 days of receiving a right-to-sue notice from the EEOC." *Bernstein v. Maximus Fed. Servs., Inc.*, 63 F.4th 967, 969 (5th Cir. 2023); *accord* 42 U.S.C. § 2000e-5(f); *Strunk v. Methanex USA, L.L.C.*, No. 23-30685, 2024 WL 366173, at *2 (5th Cir. Jan. 31, 2024). "The ninety-day limitations period is strictly construed and begins when the plaintiff receives the EEOC right-to-sue letter." *Sparks v. Lowe's Home Ctr., Inc.*, 341 F. Supp. 2d 671, 673 (E.D. Tex. 2004) (citing *Taylor*, 296 F.3d at 379); *accord Strunk v. Methanex USA, L.L.C.*, No. 23-30685, 2024 WL 366173, at *2 (5th Cir. Jan. 31, 2024).

Here, on January 10, 2020, Miles filed her First Charge of Discrimination with the EEOC shortly after her employment with PAISD ended in the fall of 2019.[11] Miles does not specify when she received her first right-to-sue letter but states that she "did not file suit." Miles further states that she filed the Second Charge of Discrimination with the EEOC on December 13, 2022.[12] In response to the Second Charge of Discrimination, the EEOC issued a second right-to-sue letter, dated July 14, 2023.

The parties do not dispute that Miles filed this lawsuit within 90 days of her receipt of the second right-to-sue letter. PAISD, however, correctly observes that because the second right-to-sue letter was not a reconsideration on the merits of the First Charge of Discrimination, the second right-to-sue letter did not extend the ninety-day limitations period. *See January v. Tex.*

---

[11] Miles's Amended Pleading states that she was terminated on September 5, 2019. PAISD's response states that Miles resigned in lieu of termination on November 14, 2019.

[12] Indeed, the copy of the Second Charge of Discrimination is stamped "RECEIVED 13 DEC 2022."

*Dep't of Crim. Just.*, 760 F. App'x 296, 300 (5th Cir. 2019); *Washington v. City of Gulfport*, 351 F. App'x 916, 918 (5th Cir. 2009); *Sparks v. Lowe's Home Ctr., Inc.*, 341 F. Supp. 2d 671, 674 (E.D. Tex. 2004).  Therefore, the court will not consider Miles's Title VII claims to the extent they rely on claims made in the First Charge of Discrimination.

Moreover, Miles filed the Second Charge of Discrimination on December 13, 2022.  The 300-day limitation period therefore includes discriminatory or retaliatory actions occurring after February 16, 2022.  Miles's employment with PAISD ended in the fall of 2019.  Accordingly, to the extent that Miles's Title VII claims are premised on allegedly discriminatory conduct that occurred during her employment, her claims are time-barred.  Remaining for consideration, however, are Miles's claims based on purportedly retaliatory action taken after February 16, 2022.

Title VII prohibits retaliation against an employee who has engaged in activity protected by the Act:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  The antiretaliation provision of Title VII "prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (quoting 42 U.S.C. § 2000e–3(a)); *accord Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 999 (5th Cir. 2022).  The antiretaliation provision is designed to "prevent an

19

employer from interfering (through retaliation) with an employee's efforts to secure or advance

enforcement of the [Title VII's] basic guarantees." *White*, 548 U.S. at 63.

To establish a *prima facie* case of Title VII retaliation, Miles must show:

(1)     she engaged in an activity protected by Title VII;

(2)     she suffered an adverse employment action; and

(3)     a causal connection exists between the protected activity and the adverse
        employment action.

*Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 898 (5th Cir. 2025) (quoting *Starnes v.*

*Wallace*, 849 F.3d 627, 631-32 (5th Cir. 2017)); *Hawthorne v. Birdville Indep. Sch. Dist.*, No.

24-10398, 2025 WL 457312, at *2 (5th Cir. Feb. 11, 2025) (quoting *Newbury*, 991 F.3d at 678);

*Willis*, 2024 WL 448354, at *2 (citing *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th

Cir. 2021)); *Saketkoo*, 31 F.4th at 1000. "Though a plaintiff need not submit evidence to establish

a *prima facie* case of retaliation at the pleading stage, he or she still must plausibly allege facts

going to the ultimate elements of the claim to survive a motion to dismiss." *Smith v. Kendall*, No.

23-50713, 2024 WL 4442040, at *6 (5th Cir. Oct. 8, 2024) (quoting *Wright*, 990 F.3d at 433).

1.     Protected Activity

"An employee has engaged in protected activity when she has (1) 'opposed any practice

made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing' under Title VII."

*Taliaferro v. Lone Star Implementation & Elec. Co.*, 693 F. App'x 307, 309-10 (5th Cir. 2017)

(citing *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372-73 (5th Cir.

20

1998)); *see Rodriguez*, 129 F.4th at 898; *Davis v. Hemmersbach US, L.L.C.*, No. 23-30806, 2024 WL 229258, at *1 (5th Cir. Jan. 22, 2024) (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)), *cert. denied*, 145 S. Ct. 198 (2024)).

### 2.    Adverse Action

The second element of a *prima facie* case requires a plaintiff to show that she was subjected to a materially adverse action by the employer. *White*, 548 U.S. at 68; *Rodriguez*, 129 F.4th at 898; *Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 460 (5th Cir. 2024); *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469 (5th Cir. 2021).  "The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *White*, 548 U.S. at 67.  A plaintiff need only "show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'" *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); *Johnson*, 90 F.4th 460 (noting that a plaintiff need not show that she suffered an "adverse employment action" "consist[ing] of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating"); *Lindsley*, 984 F.3d at 470.

The provision's standard for judging harm, which refers to the reactions of a reasonable employee is, by necessity, objective. *White*, 548 U.S. at 68.  The standard is intended to "prevent employer interference with 'unfettered access' to Title VII remedial mechanisms" and to encompass situations involving conduct objectively "likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Id*.  Nevertheless, "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id*.

(noting that Title VII "does not set forth a general civility code for the American workplace" and "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances"); *Hawthorne*, 2025 WL 457312, at *2.

The Supreme Court has held that the antiretaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace. *White*, 548 U.S. at 61, 67 (noting that the substantive antidiscrimination provision of Title VII, found in 42 U.S.C. § 2000e–2(a), differs from that of the antiretaliation provision, 42 U.S.C. § 2000e–3(a) "in important ways"). Thus, former employees may pursue retaliation claims against former employers for post-employment adverse employment actions. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997); *Wells*, 2025 WL 673439, at *4; *Allen v. Radio One of Tex. II, L.L.C.*, 515 F. App'x 295, 302 (5th Cir. 2013) ("The Supreme Court has long allowed claims for retaliation by former employees against former employers for post-employment adverse employment actions.").

### 3.    Causal Link

In order to establish the requisite causal link, a plaintiff need not prove that her protected activity was the sole factor in motivating the employer's challenged decision. *Wallace v. Seton Fam. of Hosps.*, 777 F. App'x 83, 91 (5th Cir. 2019) (quoting *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)); *Saketkoo*, 31 F.4th at 1001. Rather, a causal link is established when the evidence demonstrates that the employer's decision to take adverse action was based in part on knowledge of the employee's protected activity. *Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *7 (5th Cir. Oct. 8, 2024); *Saketoo*, 31 F.4th at 1001; *Wright*, 990 F.3d at 434; *Hauser v. Schneider Elec. Sys. USA, Inc.*, 819 F. App'x 247, 251 (5th Cir. 2020) ("A minimum

requirement of causation is that the 'employer knew about the employee's protected activity.'" (quoting *Manning*, 332 F.3d at 883)); *Ackel*, 339 F.3d at 385-86 (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)).

The Amended Complaint alleges two actions in support of Miles's claim that PAISD took actionable retaliatory steps against her in response to her First Charge of Discrimination.  First, Miles vaguely asserts that "PAISD was interfering with Miles's right to obtain employment in the workplace," but she does not provide any other information on what actions PAISD took, what employment opportunities were affected, or when the actions were taken.  Accordingly, these allegations are too vague and conclusory to state a claim of retaliation under Title VII.

Second, Miles avers that PAISD retaliated against her after she gained employment with GTS in August 2022.  Specifically, Miles contends that Bellanger contacted GTS and requested that Miles not be assigned to work on PAISD campuses.  Miles alleges that Bellanger's actions were taken in retaliation for her filing the First Charge of Discrimination in 2020.  PAISD does not dispute that Miles has identified a protected activity (filing the First Charge of Discrimination).  PAISD, however, challenges whether Miles has alleged an adverse employment action.  PAISD contends that "Miles is unable show she suffered from a material adverse employment action by the District since she was not a district employee in 2022."  It is well established, however, that a former employee may pursue a retaliation claim against a former employer.  *See Robinson*, 519 U.S. at 346; *Wells*, 2025 WL 673439, at *4; *Allen*, 515 F. App'x at 302.  The key question is whether the challenged action is "materially adverse" in that it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 57.  PAISD does not address whether the retaliatory conduct alleged by Miles

would dissuade a reasonable worker from making or supporting a charge of discrimination.  As alleged by Miles, PAISD restricted the scope of the work she was able to perform for GTS, thereby limiting her employability.  At this stage, the court considers Bellanger's alleged actions to preclude her assignment to PAISD campuses sufficiently adverse to potentially dissuade an employee from filing a charge of discrimination.

PAISD also contends that Miles has failed to allege a causal connection between the protected activity and the adverse employment action.  PAISD avers that "the time lapse, three years, alone is enough to defeat any plausible causal link between the protected activity and alleged adverse action."  PAISD cites to *Jackson v. Honeywell Intern., Inc.*, in support of this contention. 601 F. App'x 280, 287 (5th Cir. 2015).  In *Jackson*, the court held that "[c]lose timing between an employee's protected activity and an adverse action against the employee may provide the causal connection need[ed] to make out a prima facie case of retaliation."  *Id.* at 286 (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 562 n.28 (5th Cir. 2007)); *accord Hudson v. Lincare, Inc.*, 58 F.4th 222, 232 (5th Cir. 2023) (affirming the district court's grant of summary judgment on plaintiff's Title VII retaliation claim, noting that while "temporal proximity" between protected conduct and retaliation can sometimes suffice to establish causation, the inference was weakened by the plaintiff's documented performance issues); *Saketkoo*, 31 F.4th at 1001 ("To demonstrate that a causal link exists between the protected activity and the adverse employment action at the prima facie stage, an employee can show close enough timing between her protected activity and the adverse employment action.").  Importantly, however, J*ackson* does not stand for the proposition that only close temporal proximity can establish a causal link between the protected activity and the adverse action.  *See Saketkoo*, 31 F.4th at 1001 (noting that a plaintiff may

demonstrate a causal link between the protected activity and the adverse employment action in multiple ways).

The ultimate inquiry is whether the employer knew of the protected activity. *Smith*, 2024 WL 4442040, at *8; *Lira v. Edward Jones Invs.*, No. 22-50141, 2023 WL 1795706, at *3 (5th Cir. Feb. 7, 2023) ("Without awareness of the specific protected activity at the time of termination, the plaintiffs cannot connect the protected activity and with her termination."); *see also Saketkoo*, 31 F.4th at 1001 (quoting *Medina*, 238 F.3d at 684); *see McCoy*, 492 F.3d at 561 (observing that the employer "knew of [the employee's] complaints and took the alleged adverse employment action against her in close temporal proximity to her making those complaints."). Here, while close temporal proximity may be lacking between Miles's protected activity and the alleged adverse employment action, the parties do not dispute that PAISD and Bellanger, specifically, knew of Miles's First Charge of Discrimination when he contacted GTS. Accordingly, Miles has pleaded sufficient facts to support a causal link. The court cannot say, at the Rule 12(b)(6) stage, that such a causal connection is improbable.

Thus, Miles has stated a prima facie cause of action for retaliation. Specifically, Miles has pleaded that she engaged in Title VII protected activity by filing the First Charge of Discrimination; that PAISD took an adverse employment action against her by preventing GTS from assigning Miles to work at PAISD's campuses; and that PAISD took this action based on knowledge of Miles's First Charge of Discrimination. Accordingly, the court finds that Miles has sufficiently pleaded a cause of action for retaliation under Title VII.

25

III.    <u>Opportunity to Amend</u>

In her response, Miles notes that she is willing to replead her causes of action.  Generally, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend.  *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint with prejudice to refiling); *accord Strickland v. Bank of N.Y. Mellon*, 838 F. App'x 815, 821 (5th Cir. 2020); *Young v. U.S. Postal Serv. ex rel. Donahoe*, 620 F. App'x 241, 245 (5th Cir. 2015); *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003).  A district court may, however, deny leave "for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility."  *Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 302-03 (5th Cir. 2022) (quoting *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 575 (5th Cir. 2021)); *see McGee v. Citi Mortg., Inc.*, 680 F. App'x 287, 291 (5th Cir. 2017) ("Additionally, where a party seeks to amend after judgment is entered, 'we have consistently upheld the denial of leave to amend where the party seeking to amend has not clearly established that he could not reasonably have raised the new matter prior to the trial court's merits ruling.'").

A plaintiff should not be granted leave to amend after being afforded repeated opportunities to do so.  *Residents of Gordon Plaza, Inc.*, 25 F.4th at 302-03 (holding that the district court did not abuse its discretion in denying leave to amend when plaintiff repeatedly failed to cure its pleadings and did not indicate what factual allegations it sought to amend); *Stevens*, 17 F.4th at 575 (holding that a district court did not abuse its discretion by denying a fourth attempt to cure defects in a plaintiff's complaint); *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367

(5th Cir. 2014) (affirming the district court's dismissal where the plaintiff had an opportunity to cure the specified defects in his complaint and failed to do so); *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (holding that leave to amend was properly denied where plaintiff was on notice of deficiencies for nine months and did not attempt to correct them); *Torch Liquidating Tr. ex rel. Bridge Assoc. L.L.C. v. Stockstill*, 561 F.3d 377, 391 (5th Cir. 2009) (finding that plaintiff had ample opportunity to cure noted defects through a prior amendment); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004) (noting that "pleading review is not a game where the plaintiff is permitted to file serial amendments until he finally gets it right"). Furthermore, "[t]he district court may deny leave to amend if the amendment would be futile." *McGee*, 680 F. App'x at 291; *accord Heinze v. Tesco Corp.*, 971 F.3d 475, 485 (5th Cir. 2020) (holding that amendment would be futile where plaintiff made "only a general request for leave to amend" and had "not identified how amendment would cure the defects"); *Marucci Sports, L.L.C. v. Nat'l Coll. Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014); *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009); *Adrian*, 363 F.3d at 404 (opining that the district court did not abuse its discretion by denying leave to amend where the plaintiff did not indicate "what additional facts he could plead that would correct the deficiencies in his previous complaints").

"Whether leave to amend should be granted is entrusted to the sound discretion of the district court, and that court's ruling is reversible only for an abuse of discretion." *Residents of Gordon Plaza, Inc.*, 25 F.4th at 302 (holding that the district court did not abuse its discretion in denying leave to amend based on plaintiff's repeated failure to cure its pleadings and lack of diligence to present any indication of the factual allegations with which it sought to amend)

(quoting *Heinze*, 971 F.3d at 485); *accord Aldridge v. Miss. Dep't of Corr.*, 990 F.3d 868, 878

(5th Cir. 2021); *United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237,

243 (5th Cir. 2020); *Marucci Sports, L.L.C.*, 751 F.3d at 378.

 At the conclusion of the initial scheduling conference in this case, due to the garbled nature

of the original complaint, the court instructed Miles to file an amended complaint (#8).  Miles

complied and filed the Amended Complaint on March 13, 2024.  Accordingly, Miles's attorney

has already been afforded an opportunity to amend her pleadings, yet the Amended Complaint

includes references to persons and events with no tangible relationship to any of her claims, is

written in part in the first person, and is replete with misspellings.  While she states she is willing

to amend her causes of action further, Miles does not state what additional facts she would include

or otherwise describe the changes she would make.  The court is also concerned that an additional

amendment would provide no more clarity than her prior effort at amendment.  Therefore, at this

juncture, leave to amend is not warranted.

IV. Conclusion

 The court concludes that Miles has failed to state a cause of action against PAISD under

§ 1983 as she failed to plead any facts demonstrating a policy or custom of PAISD or that a

policymaker promulgated or ratified such a policy or custom.  Moreover, to the extent Miles

intends to state a cause of action for failure to train, she has failed to identify the defects of any

specific PAISD training program or to plead a pattern of unconstitutional violations.  Accordingly,

PAISD's Motion to Dismiss is GRANTED as to Miles's § 1983 claims.

 The court further holds that, to the extent Miles intends to plead a Title VII claim based

on conduct described in her First Charge of Discrimination with the EEOC, such claims are time-

barred.  The court, however, finds that Miles has sufficiently alleged a retaliation cause of action in connection with her employment with GTS in August 2022.  Therefore, PAISD's Motion to Dismiss with respect to Miles's Title VII retaliation claim based on the purported activity that occurred in August 2022 is DENIED.  PAISD's Motion to Dismiss is GRANTED with respect to all other Title VII claims.

SIGNED at Beaumont, Texas, this 25th day of March, 2025.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE