**UNITED STATES DISTRICT COURT**    **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| TASHICA MILES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:23-CV-373 |
| | § | |
| PORT ARTHUR ISD, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Port Arthur Independent School District's ("PAISD") Motion for Summary Judgment (#28), wherein it requests the court to enter summary judgment in its favor as to Plaintiff Tashica Miles's ("Miles") remaining Title VII retaliation claim. Miles filed a response in opposition (#31), and PAISD filed a reply (#32). Having considered PAISD's motion, the submissions of the parties, the record, and the applicable law, the court is of the opinion that the motion should be granted.

I. <u>Background</u>

Miles, an African-American female, worked as one of five Computer Technicians for PAISD from August 2017 to September 2019. In a sworn declaration attached to her response, Miles contends that during her employment with PAISD, one of the Technology Supervisors, Terry Bellanger ("Bellanger"), treated her unfairly on the basis of her gender and race. Sometime during the fall of 2019, Miles was informed during a meeting with Bellanger and PAISD's Chief of Technology, Anthony Jackson ("Jackson"), that her employment with PAISD was terminated. In his affidavit, Jackson states that Miles was terminated due to a continued pattern of poor job performance. On November 14, 2019, Miles submitted a letter of resignation, stating that her

resignation was effective as of September 6, 2019.  On January 10, 2020, Miles filed her First Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") ("First Charge of Discrimination"), alleging race and sex-based discrimination.  Miles received a right-to-sue letter but did not file a lawsuit at that time.

In August 2022, GTS Technology Solutions ("GTS"), one of PAISD's vendors, hired Miles to work as a "Technology Temp."  GTS assigned Miles to one of PAISD's school campuses to work on a technology refresh project ("Refresh Project").  Miles asserts that she worked at PAISD's campuses for approximately one to two weeks without incident.  Then, according to Miles's declaration, a GTS representative informed her that Bellanger had contacted GTS to request that Miles be removed from the Refresh Project.  Jackson, in his affidavit, states that he contacted GTS to request Miles's removal from the Refresh Project based on "concerns that [Miles] might take actions to retaliate against [PAISD] for discipline actions taken against her during her employment."  Miles maintains that following her removal from the Refresh Project, she "again became unemployed."

On November 4, 2022, Miles filed her Second Charge of Discrimination with the EEOC "alleging retaliation and discrimination for race[], as a continuing action."[1]  On July 14, 2023, the EEOC issued a right-to-sue letter in response to Miles's Second Charge of Discrimination.  On October 11, 2023, within 90 days of the second right-to-sue letter, Miles filed her Original Complaint (#1) alleging that PAISD discriminated and retaliated against her because of her race,

---

[1] On February 7, 2024, Miles complied with the court's order to file a copy of the second EEOC right-to-sue notice referenced in her pleading.  The second EEOC notice included a copy of her EEOC charge of discrimination.  Notably, in completing the charge of discrimination, Miles checked the following boxes under "cause of discrimination based on": race, sex, and retaliation.  Miles's Amended Complaint states that her charge of discrimination was based on race and retaliation, but it makes no mention of sex-based discrimination.

sex, and age in violation of Title VII and deprived Miles of her rights under the First and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983. On March 13, 2024, Miles filed an Amended Complaint (#13) against PAISD. On March 25, 2025, the court dismissed all of Miles's causes of action except for her Title VII retaliation cause of action in connection with her employment with GTS in August 2022 (#26). PAISD now seeks summary judgment as to Miles's sole remaining cause of action.

II.    Analysis

    A.    Summary Judgment Standard

A party may move for summary judgment without regard to whether the movant is a claimant or a defending party. *See Union Pac. R.R. Co. v. Palestine*, 41 F.4th 696, 703 (5th Cir. 2023); *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 380 (5th Cir. 2019); *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *King v. King*, 117 F.4th 301, 308 (5th Cir. 2024); *Union Pac. R.R. Co.*, 41 F.4th at 703; *United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Anderson*, 9 F.4th 328, 331 (5th Cir. 2021); *Smith v. Harris County*, 956 F.3d 311, 316 (5th Cir. 2020). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *MDK Sociedad De Responsabilidad Limitada*

*v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022); *Goldring v. United States*, 15 F.4th 639, 644-45 (5th Cir. 2021); *Playa Vista Conroe v. Ins. Co. of the W.*, 989 F.3d 411, 416-17 (5th Cir. 2021). To warrant judgment in its favor, the movant "must establish beyond peradventure *all* of the essential elements of the claim or defense." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020) (quoting *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017)); *accord Chapoy v. Union Pac. R.R.*, No. 22-40791, 2023 WL 6461252, at *2 (5th Cir. Oct. 4, 2023).

"A fact issue is 'material' if its resolution could affect the outcome of the action." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015) (quoting *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)); *see MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368; *Lexon Ins. Co., Inc. v. Fed. Deposit Ins. Corp.*, 7 F.4th 315, 321 (5th Cir. 2021); *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020). "Factual disputes that are irrelevant or unnecessary will not be counted." *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *accord Valencia v. Davis*, 836 F. App'x 292, 296 (5th Cir. 2020); *see Dyer*, 964 F.3d at 379. "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Gerhart v. Barnes*, 724 F. App'x 316, 321 (5th Cir. 2018) (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)); *accord Johnson v. City of San Antonio*, No. 22-50196, 2023 WL 3019686, at *6 n.7 (5th Cir. Apr. 20, 2023); *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322

n.3; *see Beard v. Banks*, 548 U.S. 521, 529 (2006) (quoting FED. R. CIV. P. 56(e)); *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023); *MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368; *Acadian Diagnostic Lab'ys, L.L.C. v. Quality Toxicology, L.L.C.*, 965 F.3d 404, 410 (5th Cir. 2020). The court "should review the record as a whole." *Black v. Pan Am. Lab'ys, L.L.C.*, 646 F.3d 254, 273 (5th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)); *see Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 234 (5th Cir. 2018); *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022); *Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021); *Lyons v. Katy Ind. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in her favor. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (quoting *Anderson*, 477 U.S. at 255); *Dietrich v. United Parcel Serv., Inc. (Ohio)*, No. 24-50316, 2025 WL 445050 at *3 (5th Cir. Feb. 10, 2025); *Seigler*, 30 F.4th at 476; *Batyukova*, 994 F.3d at 724; *Lyons*, 964 F.3d at 302. The evidence is construed "in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Johnson v. Cooper T. Smith Stevedoring Co., Inc.*, 74 F.4th 268, 275 (5th Cir. 2023) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *accord Lexon Ins. Co., Inc.*, 7 F.4th at 321; *Geovera Specialty Ins. Co. v. Odoms*, 836 F. App'x 197, 200 (5th Cir. 2020) (quoting *Little*, 37 F.3d at 1075).

Furthermore, the court's obligation to draw reasonable inferences "does not extend so far as to allow a wholly 'unreasonable inference' or one which amounts to 'mere speculation and conjecture.'" *Mack v. Newton*, 737 F.2d 1343, 1351 (5th Cir. 1984) (quoting *Bridges v. Groendyke Transp., Inc.*, 553 F.2d 877, 879 (5th Cir. 1977)); *accord McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 432 (5th Cir. 2020); *Batyukova*, 994 F.3d at 724 ("'Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation' will not survive summary judgment." (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016))); *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 528 (5th Cir. 1999) ("If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." (quoting *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468-69 (1992))); *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) ("[O]nly reasonable inferences in favor of the nonmoving party can be drawn from the evidence." (citing *Eastman Kodak Co.*, 504 U.S. at 468 n.14)). "[S]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Certain Underwriters at Lloyd's, London v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 256 (5th Cir. 2020) (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)); *accord Allaudin v. Perry's Rests., Ltd.*, 805 F. App'x 297, 299 (5th Cir. 2020); *Acadian Diagnostic Lab'ys, L.L.C.*, 965 F.3d at 410 (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Summary judgment is generally inappropriate, however, when inferences the parties seek to draw deal with questions of motive and intent. *Autobahn Imps., L.P. v. Jaguar Land Rover N.*

*Am., L.L.C.*, 896 F.3d 340, 350 n.23 (5th Cir. 2018); *see Perry v. H.J. Heinz Co. Brands, L.L.C.*, 994 F.3d 466, 476 (5th Cir. 2021) ("[S]ummary judgment is rarely proper when an issue of intent is involved." (quoting *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1326 (5th Cir. 1996))); *United States ex rel. Taylor-Vick v. Smith*, 513 F.3d 228, 231 (5th Cir. 2008) (stating that "we hesitate to grant summary judgment when a case turns on a state of mind determination"); *Pasco v. Knoblauch*, 223 F. App'x 319, 322 (5th Cir. 2007) ("[S]ummary judgment is rarely proper when an issue of intent is involved."). Courts have applied this principle when denying summary judgment to defendants in employment discrimination cases where genuine disputes of material fact exist as to whether the plaintiff was discriminated against on the basis of his or her protected class. *See, e.g.*, *Cappel v. La. Dep't of Transp. & Dev.*, No. 10-1810, 2012 WL 2990695, at *2 (E.D. La. July 20, 2012) (denying the defendant's motion for summary judgment on the plaintiff's age, race, and sex discrimination claims in part because "where the Defendant's intent is at issue, it is inappropriate '[t]o grant summary judgment because the party's state of mind is inherently a question of fact which turns on credibility'" (quoting *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991))); *see also Whatley v. Hopewell*, No. 1:21-CV-01185, 2022 WL 11385995, at *9 & n.27 (W.D. La. Oct. 19, 2022).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *Lyons*, 964 F.3d at 302; *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 560 (5th Cir. 2019). "[W]here the non-moving party fails to establish 'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' no genuine issue of material fact can

exist." *Goode v. Greenstream Int'l, L.L.C.*, 751 F. App'x 518, 521 (5th Cir. 2018) (quoting

*Nichols v. Enterasys Networks, Inc.*, 595 F.3d 185, 188 (5th Cir. 2007)); *see Phillips v. Sanofi*

*U.S. Servs. (In re Taxotere (Docetaxel) Prods. Liab. Litig.)*, 994 F.3d 704, 710 (5th Cir. 2021).

In such a situation, "'[a] complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial' and 'mandates the entry of

summary judgment' for the moving party." *Alvarez v. City of Brownsville*, 904 F.3d 382, 389

(5th Cir. 2018) (quoting *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th

Cir. 2008)); *accord Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023); *Stingley*

*v. Watson Quality Ford*, 836 F. App'x 286, 288 (5th Cir. 2020).

B.     Title VII Retaliation

Miles avers that PAISD retaliated against her for filing the First Charge of Discrimination.

Specifically, Miles asserts that Bellanger contacted GTS and requested that Miles be removed from

the Refresh Project because he held a grudge against her for opposing his discriminatory treatment

and for having filed the First Charge of Discrimination.  Title VII of the Civil Rights Act of 1964

prohibits retaliation against an employee who has engaged in activity protected by the Act:

> It shall be an unlawful employment practice for an employer to discriminate against
> any of his employees . . . because he has opposed any practice made an unlawful
> employment practice by this subchapter, or because he has made a charge, testified,
> assisted, or participated in any manner in an investigation, proceeding, or hearing
> under this subchapter.

42 U.S.C. § 2000e-3(a).  The antiretaliation provision is designed to "prevent[] an employer from

interfering (through retaliation) with an employee's efforts to secure or advance enforcement of

the Act's basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006).

"A plaintiff 'may prove a claim of . . . retaliation either by direct or circumstantial evidence.'" *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 507 (5th Cir. 2024). "The allocation of the burden of proof in Title VII retaliation cases depends on the nature of the plaintiff's evidence supporting the causation element." *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 999-1000 (5th Cir. 2022) (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)). "Where, as here, the plaintiff[] seek[s] to prove causation by circumstantial evidence, [she] carr[ies] the initial burden of establishing a prima facie case of retaliation,' and the retaliation claim is analyzed under a *McDonnell Douglas* burden-shifting framework." *Id.* (quoting *Ackel, Inc.*, 339 F.3d at 385); *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) ("To survive summary judgment, [the plaintiff] must satisfy the burden shifting test found in *McDonnell Douglas* . . . ."). In other words, after the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to proffer a legitimate, nonretaliatory reason for its actions. *Awe v. Harris Health Sys.*, No. 25-20144, 2026 WL 83762, at *3, ___F.4th___ (5th Cir. Jan. 12, 2026); *Lindsley*, 984 F.3d at 470; *Anderson v. La. Dep't of Transp. & Dev.*, 836 F. App'x 304, 307 (5th Cir. 2020); *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 619 (5th Cir. 2020). "[I]f that burden is satisfied, the burden then ultimately falls to the employee to establish that the employer's stated reason is actually a pretext for unlawful retaliation." *Royal*, 736 F.3d at 400; *accord Awe*, 2026 WL 83762, at *3; *Ayorinde*, 121 F.4th at 507; *Anderson*, 836 F. App'x at 307; *Berry v. Sheriff's Off. Ouachita Par.*, 834 F. App'x 843, 847 (5th Cir. 2020); *Badgerow*, 974 F.3d at 619. Furthermore, to carry her ultimate burden, the plaintiff must demonstrate that the adverse employment action would not have occurred "but for" the employee's participation in the protected activity. *Goerz v. Kendall*, No. 24-50151, 2024 WL 4930385, at *2 (5th Cir.

Dec. 2, 2024), *cert. denied sub nom. Goerz v. Meink*, 146 S. Ct. 109 (2025); *Anderson*, 836 F.

App'x at 307; *Berry*, 834 F. App'x at 847; *Badgerow*, 974 F.3d at 619.

### 1. Prima Facie Case

To establish a prima facie case of Title VII retaliation, Miles must show:

(1)     she engaged in an activity protected by Title VII;

(2)     she suffered an adverse employment action; and

(3)     a causal connection exists between the protected activity and the adverse
        employment action.

*Awe*, 2026 WL 83762, at *2 (quoting *Cabral v. Brennan*, 853 F.3d 763, 766-67 (5th Cir. 2017));

*Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 898 (5th Cir. 2025) (quoting *Starnes v.*

*Wallace*, 849 F.3d 627, 631-32 (5th Cir. 2017)); *cf. Yarbrough v. SlashSupport, Inc., Glow*

*Networks, Inc.*, No. 24-40421, 2025 WL 2647148, at *2 (5th Cir. Sept. 16, 2025) (plaintiff no

longer required to show an "ultimate employment decision" to establish the adverse employment

action element to establish a retaliation claim).

### a. Protected Activity

The parties do not dispute that Miles has identified a protected activity—filing the First

Charge of Discrimination—in satisfaction of the first element of her prima facie case for

retaliation. *See, e.g.*, *Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134

F.4th 286, 295 (5th Cir. 2025) ("The filing of an EEOC charge constitutes protected activity.").

Accordingly, the court need only consider whether Miles has established an adverse employment

action and demonstrated a causal link between the protected activity and the adverse employment

action to establish her prima facie case of retaliation.

b.    <u>Materially Adverse Action</u>

The second element of a prima facie case requires a plaintiff to show that she was subjected to a materially adverse action by the employer.  *White*, 548 U.S. at 68; *Rodriguez*, 129 F.4th at 898; *Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 460 (5th Cir. 2024); *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469 (5th Cir. 2021).  "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  *White*, 548 U.S. at 67.  A plaintiff need only "show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'"  *White*, 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006); *Johnson*, 90 F.4th 460 (noting that a plaintiff need not show that she suffered an "adverse employment action" "consist[ing] of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating"); *Lindsley*, 984 F.3d at 470.  The provision's standard for judging harm, which refers to the reactions of a reasonable employee is, by necessity, objective.  *White*, 548 U.S. at 68.  The standard is intended to "prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms" and to encompass situations involving conduct objectively "likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers."  *Id.*  Nevertheless, "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence."  *Id.* (noting that Title VII "does not set forth a general civility code for the American workplace" and "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances"); *Hudson v. Lincare, Inc.*, 58 F.4th 222, 232 (5th Cir.

2023) ("An employment decision is not an adverse action if it does not objectively worsen the employee's working conditions.").

The Supreme Court of the United States has held that the antiretaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace. *White*, 548 U.S. at 61, 67 (noting that the substantive antidiscrimination provision of Title VII, found in 42 U.S.C. § 2000e–2(a), differs from that of the antiretaliation provision, 42 U.S.C. § 2000e–3(a) "in important ways"). Thus, former employees may pursue retaliation claims against former employers for post-employment adverse employment actions. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997); *Wells*, 2025 WL 673439, at *4; *Allen v. Radio One of Tex. II, L.L.C.*, 515 F. App'x 295, 302 (5th Cir. 2013) ("The Supreme Court has long allowed claims for retaliation by former employees against former employers for post-employment adverse employment actions.").

The Supreme Court "phrase[d] the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances." White, 548 U.S. at at 69. In other words, "[c]ontext matters." *Id.* Conduct that might constitute actionable retaliation toward one employee might be relatively harmless in a different context. *Id.* at 68-70 (explaining that "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children"). "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.* at 69 (quoting *Oncale*, 523 U.S. at 82-83). Nonetheless, "[a]n employee's decision to report discriminatory behavior cannot immunize that

employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 68. "Whether a particular [action] is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances."'" *Id.* at 71 (quoting *Oncale*, 523 U.S. at 81).

Here, PAISD contends that too much time elapsed between Miles's protected activity and the purported adverse employment action to establish the second element of a prima facie case. Miles filed the First Charge of Discrimination on January 10, 2020, then, approximately 31 months later, PAISD contacted GTS to request that Miles be removed from the Refresh Project at PAISD's campuses in August 2022. PAISD asserts that the lack of temporal proximity makes its purported adverse action too attenuated to be considered a material adverse action. Temporal proximity, however, is only one method of demonstrating a causal link between the protected activity and the adverse employment action, rather than a prerequisite for establishing that a materially adverse employment action occurred. *See Awe*, 2026 WL 83762, at * 3; *Saketkoo*, 31 F.4th at 1001.

PAISD relies heavily on *Allen v. Radio One of Texas II, LLC* in support of its argument that Miles cannot show an adverse employment action. In *Allen*, however, the United States Court of Appeals for the Fifth Circuit relied on the lack of temporal proximity between the protected act and the employer action "*in conjunction with the unusual circumstances*," to arrive at its conclusion that the plaintiff failed to demonstrate "actionable retaliation." 515 F. App'x at 302 (emphasis added) (noting that the employee had twice threatened her employer with contract litigation and worked for a direct competitor prior to starting her own business). Indeed, the Fifth

Circuit observed the lack of temporal proximity in concluding that the plaintiff had failed to establish causation. *Id*. at 302-03. Accordingly, the court is unpersuaded that the passage of time between Miles's First Charge of Discrimination and PAISD's request to remove her from its Refresh Project made the request any less materially adverse in terms of the second element of Miles's prima facie case for retaliation.

PAISD further states "a reasonable employee would not be dissuaded from filing an EEOC charge based on the speculative possibility that a former employer might later oppose the former employee's assignment by a third party vendor to the former employer's business." The court disagrees. Removing Miles from the Refresh Project and refusing to allow her to work on any PAISD campus was more than a mere petty slight or annoyance and objectively diminished Miles's work opportunities. Miles explains that following her removal from the Refresh Project, GTS offered to place Miles on different projects in Houston, Texas, or Austin, Texas, which would require her to relocate. Under these circumstances, a reasonable employee could be dissuaded from filing an EEOC charge if her former employer refused to allow her to work on its projects through a third-party contractor, especially when the available alternate employment opportunities would require her to relocate to a new geographical area. *See Saketkoo*, 31 F.4th at 1000-01 (finding that a conversation wherein former employer told potential employer not to hire former employee, was an adverse employment action); *see also Awe*, 2026 WL 83762, at *3 (employer's failure to rehire former employee constituted a materially adverse employment action); *cf. Hudson*, 58 F.4th at 231 (putting employee on a "formal action plan" or warning an employee of their poor work performance is not a materially adverse employment action). Thus, removing Miles from the Refresh Project was a materially adverse action.

14

c.    <u>Causal Connection</u>

With respect to the third element of a prima facie case, PAISD contends that Miles has failed to allege a causal connection between the protected activity and the adverse employment action.  Although the third element of a prima facie case—causation—is similar to the ultimate issue in an unlawful retaliation claim, the standard for establishing a causal link at the prima facie stage is much less stringent.  *Saketkoo*, 31 F.4th at 1001; *Richards v. Lufkin Indus., L.L.C.*, 804 F. App'x 212, 215 (5th Cir. 2020); *Starnes*, 849 F.3d at 635.  As the Fifth Circuit has commented in the Title VII context:

> At first glance, the ultimate issue in an unlawful retaliation case—whether the defendant discriminated against the plaintiff *because* the plaintiff engaged in conduct protected by Title VII—seems identical to the third element of the plaintiff's prima facie case—whether a *causal* link exists between the adverse employment action and the protected activity.  However, the standards of proof applicable to these questions differ significantly.

*Long v. Eastfield Coll.*, 88 F.3d 300, 304 n.4 (5th Cir. 1996); *accord Saketkoo*, 31 F.4th at 1001. "At the prima facie stage, a plaintiff can demonstrate a causal link by showing close temporal proximity between the protected activity and the adverse employment action." *Thornton v. Univ. of Tex. Sw. Med. Ctr. Sch. of Med.*, No. 24-10594, 2025 WL 619166, at *4 (5th Cir. Feb. 26, 2025); *Saketkoo*, 31 F.4th at 1001.  Alternatively, she can present evidence demonstrating that the adverse action was "based in part on knowledge of the employee's protected activity." *Thornton*, 2025 WL 619166, at *4 (quoting *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)); *Saketkoo*, 31 F.4th at 1001.  In addition, a plaintiff can employ "'cat's paw causation' if a person who has retaliatory animus uses a decisionmaker to bring about an intended retaliatory action." *Saketkoo*, 31 F.4th at 1001.  "The 'causal link' element is satisfied when the plaintiff shows that the employment decision and his protected activity 'were not wholly unrelated.'"

*Medina*, 238 F.3d at 684 (quoting *Simmons v. Camden Cnty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)); *accord Saketkoo*, 31 F.4th at 1001.

PAISD contends that while knowledge of a protected activity is required, "mere knowledge is not sufficient alone to establish a prima facie case for retaliation," and that "the significant lapse in time fatally undermines any inference of causation between the protected activity and purported adverse action." PAISD is correct that an employer's knowledge of an employee's protected activity alone is not enough, but must be connected to the employer's adverse action. *See Thornton*, 2025 WL 619166, at *5 ("[A]lleging knowledge of protected activity is not the same as alleging that an adverse employment action was 'based in part' on that knowledge."); *Goerz*, 2024 WL 4930385, at *3 ("Knowledge of protected activity without evidence that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity' is insufficient to establish prima facie causation . . . ."). In addition, where there is other evidence to support a causal link, temporal proximity is not required. *See Awe*, 2026 WL 83762, at *3 (holding that while "[t]emporal proximity can be an indicator or a proxy for this form of causation, . . . it is not required or dispositive if there is other evidence of knowledge").

Here, Miles does not rely on temporal proximity to establish a causal link, but rather she contends that her removal from the Refresh Project was based in part on Bellanger's knowledge of her protected activity. Miles's evidence in support of her claim comes from her declaration. Miles contends that her supervisor, Bellanger, treated her differently than her white male coworkers and demonstrated hostility toward her throughout her employment with PAISD. Moreover, Miles asserts that PAISD's Chief of Technology, Jackson, was aware of Miles's complaints about Bellanger's treatment of her, but that he did nothing to prevent it. Miles further

avers that Bellanger contacted GTS to have her removed from the Refresh Project because he "held a grudge against [her] for having opposed his discriminatory treatment and for having filed the EEOC charge." The parties dispute whether it was Jackson or Bellanger who contacted GTS to request that Miles be removed from the Refresh Project. It is undisputed, however, that at the time that GTS was contacted, both Jackson and Bellanger were aware of Miles's First Charge of Discrimination. Construing the evidence in the light most favorable to Miles, she has made a sufficient showing at the prima facie stage that her removal from the Refresh Project was motivated at least in part by a desire of PAISD managers to retaliate against her for her protected activity. Accordingly, Miles has stated a prima facie case for retaliation under Title VII.

### 2. Legitimate, Non-retaliatory Reasons

Nevertheless, PAISD has adduced evidence of non-retaliatory reasons for its removal of Miles from the Refresh Project. In its Motion for Summary Judgment, PAISD contends that it requested GTS to remove Miles from the Refresh Project based on her prior poor job performance and misconduct as well as concerns about potential retaliatory acts against its computer systems. In support, PAISD provides a Notice of Decision of Level 1 Grievance, dated October 17, 2019, wherein Jackson advises Miles that he conducted a Level One grievance hearing with Miles on October 8, 2019. Jackson stated that after extensive review of her employment history and considering her oral presentation and argument, he determined that the termination of her employment was appropriate. Jackson outlined several instances when Miles was disciplined

while employed by PAISD.[2]  Moreover, Jackson stated that during the grievance hearing,  Miles alleged that another male employee was allowed to take a district vehicle to his home.  Jackson concluded that he reviewed the tracking information of the vehicle assigned to that employee and found no occasions where the vehicle was taken home.

In addition, PAISD provides Jackson's affidavit, dated April 14, 2023, wherein he attests that Miles has a documented history of performance deficiencies during her employment with PAISD, including tardiness, misuse of district vehicles, and failure to follow established protocols. PAISD also attached several exhibits documenting instances where Miles was reprimanded for tardiness, failure to clock in properly, failure to follow directives, and misuse of District vehicles.[3] Miles's documented history of performance deficiencies during her employment with PAISD amount to legitimate, nonretaliatory reasons for its action.  *See, e.g.*, *Phillips v. Enter. Prods. Co.*, No. 25-30222, 2026 WL 75904, at *4 (5th Cir. Jan. 9, 2026) ("Job performance is a legitimate, non-retaliatory reason for termination."); *Saketkoo*, 31 F.4th at 1002 n.8; *Edmonsond v. Brookwood Cmty.*, 114 F. App'x 148, 149 (5th Cir. 2004) (The plaintiff's "excessive absenteeism and poor job performance provided legitimate reasons for his discharge").

---

[2] Specifically, Jackson notes that "Ms. Miles received two written reprimands for continued tardiness and was suspended without pay within her first 18 (eighteen) months of employment with PAISD"; "Ms. Miles was again issued a written reprimand and suspended without pay on May 16, 2019, concerning driving to her home during work hours and remaining at her home more than 3 hours while on duty. On May 16, 2019, Ms. Miles was notified in writing that 'Failure to follow directives, normal work duties, and other assigned duties' would result in immediate termination"; and "On August 29, 2019, Ms. Miles used a district vehicle to go to her home during work hours, without prior approval, or prior notice to her supervisor. This was in clear opposition to the written directives and verbal counseling she had been given. The detour to her home resulted in loss of one hour work time that she did not report."

[3] These disciplinary records identify "Tish Wilburn" as the employee at issue.  Miles, in her declaration, explains that she also went by the name Tish Wilburn during her employment with PAISD.

3.    Pretext

The final inquiry, therefore, is whether the proffered reasons for the alleged acts of retaliation are merely pretextual.  *Awe*, 2026 WL 83762, at *3; *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 835 (5th Cir. 2022); *Anderson*, 836 F. App'x at 307; *Berry*, 834 F. App'x at 847; *Badgerow*, 974 F.3d at 619.  To demonstrate pretext, the employee must produce evidence "that could lead a reasonable fact-finder to conclude that 'the adverse [employment] action would not have occurred "but for"' the employee's decision to engage in an activity protected by Title VII." *Wilkerson v. Parish*, No. 21-30716, 2025 WL 1420530, at *4 (5th Cir. May 16, 2025) (quoting *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017)); *accord Phillips*, 2026 WL 75904, at *4.

"Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action."  *Phillips*, 2026 WL 75904, at *4 (quoting *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (2020)).  "One way to show pretext is by providing evidence that similarly situated employees were treated more favorably." *Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 297 (5th Cir. 2024) (citing *Brown*, 969 F.3d at 580).  "And while temporal proximity between a protected activity and an adverse employment action is not sufficient by itself to demonstrate pretext, 'other evidence, in combination with . . . temporal proximity, is sufficient for a reasonable jury to find but-for causation.'"  *Id*. (citing *Brown*, 969 F.3d at 579).  In addition, "[w]hen an employer offers inconsistent explanations for its employment decision at different times"  the court may infer that the employer's proffered reasons are pretextual.  *Staten v. New Palace Casino, LLC*, 187 F. App'x 350, 359 (5th Cir. 2006); *see Brown*, 969 F.3d at 581; *Alkhawaldeh*, 851 F.3d at 428.

19

In order to survive a motion for summary judgment, the plaintiff must show a "conflict in substantial evidence" on this issue. *Phillips*, 2026 WL 75904, at *4 (quoting *Saketkoo*, 31 F.4th at 1002); *Septimus*, 399 F.3d at 609 (holding that the "the plaintiff may still avoid summary judgment if she demonstrates a genuine issue of material fact whether the legitimate reasons proffered by the defendant are not its true reasons, but instead are a pretext for discrimination"). The quality and weight of the evidence determines whether it is substantial. *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021); *see also Saketkoo*, 31 F.4th at 1002 (holding that in evaluating a plaintiff the court considers "numerous factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered"). The court views all evidence and draws all justifiable inferences in favor of Miles, the nonmovant. *See Phillips*, 2026 WL 75904, at *3.

Under these circumstances, Miles has failed to demonstrate that PAISD's proffered rationale for her removal is pretextual. Miles asserts that PAISD's reasons for removing her from the Refresh Project are "false and pretext" and that Jackson fabricated these reasons to "provide cover for [Bellanger's] retaliatory conduct." In support of her contention, Miles avers that during her employment with PAISD, she performed her job duties "competently and professionally," and Bellanger disciplined her unfairly. The sole evidence that Miles offers for these statements is her own declaration, but "a plaintiff's summary judgment proof must consist of more than 'a mere refutation of the employer's legitimate nondiscriminatory reason.'" *Jones*, 8 F.4th at 369. Simply disputing the accuracy of PAISD's account of her misconduct is insufficient to create a genuine issue of material fact as to pretext. *See Goerz*, 2024 WL 4930385, at *3 ("Simply disputing the

20

underlying facts of an employer's decision is not sufficient to create an issue of pretext." (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007))).

Additionally, Miles contends that the parties' disagreement as to whether Jackson or Bellanger contacted GTS to request Miles's removal from the Refresh Project creates a genuine dispute of material fact preventing the court from granting summary judgment. Nonetheless, construing the evidence in the light most favorable to Miles, the nonmoving party, and assuming that Bellanger, rather than Jackson, contacted GTS, has no impact on the court's analysis. They are both managerial officials of PAISD. Any alleged confusion as to the identify of the person who contacted GTS does not demonstrate that PAISD has provided disingenuous and inconsistent explanations for requesting Miles's removal that could support an inference of pretext. The record demonstrates that PAISD has consistently maintained that Jackson was the individual who communicated with GTS due to his concerns about Miles's documented performance deficiencies and potential risks to PAISD. Whether Bellanger or Jackson contacted GTS does not bolster Miles's contention that PAISD's proffered reasons for requesting her removal from the Refresh Project were pretextual.

In view of Miles's numerous documented performance deficiencies, it cannot be said that "but for" her First Charge of Discrimination, PAISD would have allowed Miles to work on the Refresh Project. Thus, summary judgment is warranted with respect to Miles's retaliation claim.

III.    Conclusion

PAISD has articulated legitimate, non-retaliatory reasons for requesting Miles's removal from the Refresh Project, and Miles has failed to adduce any evidence from which a jury could conclude that PAISD's reasons are pretextual. *See Awe*, 2026 WL 83762, at *3. Accordingly,

based on the record, a reasonable jury could not conclude that Miles's protected activity was the "but for" cause of the alleged adverse employment action.  *See Saketkoo*, 31 F.4th at 1003. Accordingly, PAISD's Motion for Summary Judgment (#28) is GRANTED.

There remain no material facts in dispute, and PAISD is entitled to judgment as a matter of law.  A Final Judgment will be entered separately.

SIGNED at Beaumont, Texas, this 2nd day of February, 2026.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE